OPINION OF THE COURT
Bernard E. Stanger, J.
We have before us for resolution a somewhat complex custody dispute raising legal issues that lead this court into a potential confrontation with a court of comparable jurisdiction in our respected sister State of Maryland. We are governed here not only by a uniform compact of State laws on the issue, but by a Federal law covering the same subject.
THE FACTUAL BACKGROUND
The parties (to whom we shall refer by name to avoid possible confusion) were married in Maryland in November 1975, but made their home in the State of Pennsylvania until 1982. In that year, following a deterioration of their marriage, Kathy Ferguson commenced a divorce action in the Court of Common Pleas, Chester County, Pennsylvania (hereinafter Pennsylvania Court), in which she sought custody of the parties’ son, David, Jr. In an intermediate proceeding the Pennsylvania Court granted her an order of protection, dated October 13, 1982, giving her protection from her estranged husband and requiring the posting of a bond in the sum of $1,000 by David Ferguson in connection with visitation. All of this took place while Kathy Ferguson was expecting a second child and in papers before this court she claims that David Ferguson urged her not to carry the second child to term.
On March 16, 1983, Kathy Ferguson gave birth to Lydie Anne Ferguson and the parties stipulated that Kathy Ferguson was to have custody of the daughter as well. This was "so ordered” by the Pennsylvania Court on October 3, 1984, although the actual decree of divorce was not granted until October 17, 1984. Although the record before us does not go into detail, it appears that both parties left the State of Pennsylvania and took up separate residences in the State of *711 Delaware for a short time. After this, David Ferguson went back to Maryland where he appears to have made his permanent domicile.
In September 1984 Kathy Ferguson sent both children to her former husband at his residence in Elkton, Maryland. The papers before this court are in irreconcilable conflict as to the circumstances attendant upon this act. Kathy Ferguson contends that this was designed as a brief visit to foster a close and loving relationship between the children and their father, while David Ferguson states that he accepted the children because his former wife, Kathy Ferguson, had declared herself "not emotionally equipped to handle the day-to-day care responsibilities of raising the children.” However, after only a few weeks sojourn by the two children with their father in Elkton, Maryland, David Ferguson, on October 5, 1984, filed a petition for emergency custody and modification of custody order in the Circuit Court for Cecil County, State of Maryland (hereinafter Maryland Court). On the 22nd day of October 1984 the matter came on for a hearing, at which time both sides were present and represented by counsel and the custody petition by David Ferguson was dismissed. Kathy Ferguson thereupon took both children and came to New York, where she has since continuously resided with them.
Upon recovering the children, Kathy Ferguson found that the daughter Lydie has sustained injury and, after skull X rays the child received approximately 10 sutures which, according to Kathy Ferguson, may leave Lydie with permanent scars on her face. She was told by David Ferguson that it was an accidental injury from a dog bite, but not only did she press criminal charges against him in Maryland, but applied to this court on November 1, 1984 for an order of protection banning further contact by David Ferguson from herself and the children. She stated to this court that she had been threatened by David Ferguson and that he was also a heavy cocaine user. This court granted the relief prayed for and awarded temporary custody to Kathy Ferguson, which is authorized under Family Court Act § 842.
At this point in time, David Ferguson, in his determined quest for custody of the children, took several steps. His first act was to petition the Maryland Court for a reconsideration of its October 22 decision dismissing the petition. He based this on mistakes of fact coupled with misrepresentations by Kathy Ferguson. Secondly (and here we must speculate to some extent), he set into motion a proceeding in the Pennsyl *712 vania Court, which had divorced the parties, to reopen thé case and vacate the custody award incorporated in the divorce decree. This resulted in an order from the Pennsylvania Court vacating the custody provisions of its divorce decree of October 17, 1984, and on January 3, 1985 the Pennsylvania Court— with neither party nor the children residing in that State— suddenly modifying a divorce decree of the prior year.
Kathy Ferguson claims that she was never aware of that proceeding in the Pennsylvania Court, nor was any attorney authorized to act in her behalf therein. Without making any finding on the subject (since it has relatively no bearing on the issues at hand) we are prone to credit her argument as having the ring of truth for it taxes our imagination that this woman, who vigorously fought for custody in the Maryland Court and sought continued custody in our court, would knowingly consent to a vacatur of her custody rights in the Pennsylvania Court, a court in a State from which all her ties had been severed.
David Ferguson’s question for custody relief was still not concluded. On December 28, 1984, well after having filed a petition for reconsideration in the Maryland Court, he filed a petition for a writ of habeas corpus in Rockland County Family Court, in which he asked us to adjudicate his custody and visitation rights. Clearly, this placed him in the position of seeking child custody in two separate and distinct courts at the same time.
On January 11, 1985, we modified our order of protection dated November 1, 1984 to permit supervised visitation for David Ferguson under the auspices of the Rockland County Attorney’s office, and Kathy Ferguson states in an affidavit dated May 30, 1985 that David Ferguson exercised such visitation only once.
It must be noted at this juncture that in the file V-403-84, in which David Ferguson petitioned this court for custody, a letter from David Ferguson’s attorney dated January 9, 1985 appears which was addressed to one of this court’s clerical members, and not to Kathy Ferguson or her attorney, which reads as follows:
"Dear Ms. McGuire:
"This is to advise you that David Ferguson wishes to withdraw his petition for custody and/or visitation.
"Thank you for your consideration in this matter.
"/s/ Sheri A. Yodowitz”.
No action was taken on this letter.
*713 On February 8, 1985, Kathy Ferguson petitioned this court for custody of her daughter, Lydie, notwithstanding the fact that she already had temporary custody under the order of protection dated November 1, 1984. An examination of the file shows that no action was taken on this petition and it was not until March 1985 that this entire matter demanded the attention of this court.
David Ferguson (in Mar. 1985) served motion papers with numerous exhibits seeking to dismiss the order of protection on the grounds that this court lacked jurisdiction in the matter. The thrust of that motion was that there was presently pending in the State of Maryland an action concerning custody and visitation. One of the exhibits showed that the custody decree of the Pennsylvania Court had been vacated. The basis for this motion actually was that a motion for reconsideration was before the Maryland Court — a motion which had been submitted to Maryland in November and upon which no ruling had been made four months later.
Clerical error caused the filing of the motion papers to dismiss to be lodged in a wrong docket folder, which were compounded by delays on the part of Kathy Ferguson’s attorney. The opposition papers ultimately reached this court by June of this year.
On May 30, 1985, Kathy Ferguson once again filed a petition for a writ of habeas corpus, this time asking for custody of both children, as contrasted with her earlier petition in which she sought custody of only Lydie. This petition is also still before this court and our records show that David Ferguson was served with the petition. At a court appearance on June 28, 1985, counsel for David Ferguson renewed her motion to dismiss the order of protection which we extended until the motion could be resolved. On September 9, 1985, we again renewed the order of protection and set a date for trial and conference on November 12, 1985. If the decision of this court on the motion to dismiss the order of protection was unfavorable to David Ferguson, the court would make a final effort on that date to settle the issues amicably or the matter would go to trial.
On that September 9, 1985 appearance, counsel formally moved this court for an order permitting withdrawal of David Ferguson’s habeas corpus petition of December 28, 1984 and we reserved decision, directing counsel for both sides to sub *714 mit briefs on the legal issue raised. As of this date, the court has received nothing. With November 12, 1985 drawing nigh, we felt impelled to rule on the two questions before us, namely, the motion to dismiss the order of protection and the motion to withdraw the petition of December 28, 1984.
If we may be permitted to editorialize, it has been the experience of this court that an extensive proportion of custody disputes become increasingly complex as the contest ripens into ever deepening ramifications and the case at bar is rapidly trying to follow that course. On November 6, 1985, this court received a certified copy of a Maryland Court order, which reads:
"DAVID WILLIAM FERGUSON Complainant v
KATHY T. FERGUSON Respondent
IN THE CIRCUIT COURT FOR
CECIL COUNTY CIVIL ACTION NO. 84218e
ORDER OF CUSTODY
Hearing having been held on November 5, 1985, testimony having been taken, and this court feeling that the best interest [sic] of the children is that they be in the custody of their father, it is hereby ordered and decreed that custody of the minor children of the parties, namely, David William Ferguson, Jr., age four, and Lydie Anne Ferguson, age two, be and it is hereby awarded to the complainant, David William Ferguson, Sr., visitation is to be determined at a later date all subject to further order of this court. dated: November 5,1985
/s/ Edward E. E. Rollins, Jr.
Judge”
With the service of the Maryland Court order (above), counsel for David Ferguson now asks that we direct the transfer of custody of the two children involved herein to their father by virtue of the full faith and credit clause of the United States Constitution, which reads, in part, as follows:
"Full Faith and Credit shall be given in each State to the public Acts, Records and judicial Proceedings of every other State” (US Const, art IV, § 1).
the law
This proceeding must look for its determination on the joint *715 effect of State and Federal statutes. In the former, a compact, consisting of identical legislation which has been enacted by both Maryland and New York known as the Uniform Child Custody Jurisdiction Act (UCCJA; Domestic Relations Law § 75-a et seq., Sept. 1, 1978) covers jurisdiction and other facets of contested child custody. Also covering these matters is the Parental Kidnaping Prevention Act (PKPA; 28 USC § 1738A), and this latter law controls where State law is unable to provide a resolution of the issues. (Matter of Mebert v Mebert, 111 Misc 2d 500.) One of the essential differences in these two laws is that under the Federal law (PKPA) the definition of "home state” is characterized as the State in which the child lived with a parent for at least six consecutive months and this difference has direct bearing on the issues presently before us.
No point would be served by delving into the history underlying these two sets of laws. The reported cases have eloquently, indeed brilliantly, reviewed the application of these laws to the problem of jurisdiction. (Matter of Yacco v Durley, 117 Misc 2d 69; Schaeffer v Schaeffer, 101 Misc 2d 118; De Passe v De Passe, 70 AD2d 473; Matter of Debra S. v Roger S., 116 Misc 2d 264.)
At the time of Kathy Ferguson’s application for an order of protection and appropriate custody provisions, there was no court order outstanding anywhere that this court was obliged to honor. The Maryland Court had denied a custody application to David Ferguson and it was patently obvious that the State of Pennsylvania no longer constituted an ongoing forum for these parties. The order of protection which we granted in November 1984 was fully warranted, there being no other court that could take jurisdiction. (See, Domestic Relations Law [UCCJA] § 75-o [1], which reads, in part: "If a court of another state has made a custody decree, a court of this state shall not modify that decree unless (1) it appears to the court of this state that the court which rendered the decree does not now have jurisdiction”.)
Literally, at the time of Kathy Ferguson’s initial petition to this court, there was no court anywhere which had subject matter jurisdiction which, in this case, was invoked by the application of Domestic Relations Law § 75-d (1) (c) (ii). The injunction against David Ferguson’s contact with his former wife and children for a temporary period was a form of crisis intervention to protect the children who, at that point, had no enforceable safeguards affecting their security.
*716 When David Ferguson petitioned this court on December 28, 1984 for custody/visitation, we wonder whether he advised the Maryland Court (in which his application for reconsideration was still pending) that he had not only submitted to the jurisdiction of the New York Family Court, but was, in effect, commencing a duplicate proceeding on the same subject matter. Had he advised the Maryland Court of this, under the UCCJA the Maryland Court would have been under a clear obligation to communicate with this court (Domestic Relations Law § 74-j [3], which states that "If, during the pendency of a custody proceeding, any party learns of another custody proceeding concerning the child in this or another state, he shall immediately inform the court of this fact”; see, Appelblom v Appelblom, 66 AD2d 188). This court received no inquiry from the Maryland Court.
The four criteria for jurisdiction are set out in UCCJA § 75-d. The one that applies to the instant case is that which refers to the "home state” of the child at the time of the commencement of the custody proceeding since, all other considerations involved, the petition of Kathy Ferguson for custody on May 30, 1985 clearly brings her within the purview of the "home state” requirement. She and the two children came to New York on or about October 22, 1984 and there is no indication that she or the children have resided anywhere else in this almost seven-month period. In the absence of any definitive court order, New York must assume the role of home State. (Matter of Theresa H. v Pasquale G., 102 Misc 2d 759; Matter of Priscilla S. v Albert B., 102 Misc 2d 650; Gomez v Gomez, 86 App Div 594 [2d Dept].)
We, therefore, take the position that this court has full and complete jurisdiction of this matter and shall retain such jurisdiction. The Federal requirement of full faith and credit does not apply in this case under PKPA which, among other things, was designed to prevent forum shopping. We decline to follow the order, made almost a year after its original determination, in which the Maryland Court made a custody determination directly contrary to its original determination when all of the parties were then physically before it.
The motion to withdraw the petition of David Ferguson dated December 28, 1984 is denied. There is no procedure in the Family Court Act covering this situation and under Family Court Act § 165 the Civil Practice Law and Rules must control. Under CPLR 3217 covering voluntary discontinuance, the letter by David Ferguson’s counsel does not serve to *717 accomplish the withdrawal and it must be done by court order. The court denies the motion to withdraw the petition of David Ferguson since any custody determination must directly involve his own application for visitation and/or custody.
Accordingly, the motion to dismiss the order of protection dated November 1, 1984 is denied in all respects.
(On Reargument, December 13, 1985)
By decision dated November 13 1985, this court attempted to resolve a custody decision which involved the courts of the State of Maryland and this court. Notwithstanding this fact, a further motion was lodged with this court returnable November 27, 1985 in which the attorney for David Ferguson asked this court to dismiss the order of custody and to recognize and enforce full faith and credit to a Maryland custody order of November 5, 1985. Our decision of November 13, 1985 herein covers much of the subject matter raised on the second motion and should be read together with this decision.
We are constrained to deny the application in the motion returnable on November 27, 1985 because no new issues have been presented to us which would be of sufficient force to overturn our prior decision.
There is no question but that on November 1, 1984 when this court made its first order of protection, no other court had jurisdiction of the subject matter. It must be borne in mind that the original Maryland Court custody proceeding initiated by David Ferguson was dismissed on October 22, 1984 and it was not until November 5, 1985 that the Maryland Court again expressed interest in the matter. In the interim, this court in New York State had made a temporary custody order and it seems to us that Mr. Ferguson did not report this fact to the Maryland Court which would normally have refrained from acting had it been aware of another outstanding order in a court of competent jurisdiction.
It is not denied by Mr. Ferguson that he made application to this court in December of last year and that in doing so, submitted to this court’s jurisdiction. In an attempt by him to put a good face on the situation, he alleges that he only was asked to submit a "form” petition to enforce Maryland’s visitation order and he stated that he specifically asked whether he would be submitting to the jurisdiction of the New York courts as he in no way wanted to do so. Considering that he was not represented by counsel at that time, we find his statement to be somewhat suspect since the concept of submis *718 sion to jurisdiction is normally not appreciated fully by laymen. In effect, he would ask us to believe that he was misled into making an application for custody without subjecting himself to jurisdiction. It does not require a legal background for one to know that when one enters a courthouse and fills out papers, he is invoking the court’s assistance for all purposes. We are not impressed by his argument that he was merely submitting a petition to enforce a Maryland decree since we have been shown no decree from a Maryland Court that was in existence at that time. The first Maryland decree with which this court has been supplied bears the date November 5, 1985, 11 months following his application to have his October custody application reconsidered.
We also note (and we commented on this in our decision of Nov. 13, 1985) that David Ferguson’s counsel wrote to this court on January 9, 1985 seeking leave to withdraw "David Ferguson’s petition for custody and/or visitation”. It is therefore clear that counsel for David Ferguson recognized that he had petitioned this court for custody and was thereby within this court’s jurisdiction. As previously noted, this letter received no formal action from this court, probably due to the fact that it was not a motion and was not on notice to any other party.
On January 11, 1985, this court modified its order of protection dated November 1, 1984 to permit supervised visitation for David Ferguson under the auspices of the Rockland County Attorney’s office and there was no question but that Mr. Ferguson invoked such visitation right on only one single occasion. Clearly, he was aware of the fact that New York was exercising jurisdiction and was complying with the court’s direction. It is incomprehensible to us at this late date to accept the fact that Maryland had jurisdiction throughout this entire period. We, therefore, reaffirm our decision dated November 13, 1985 and this court declines to transfer this matter to the State of Maryland because we do not believe that the law requires that this be done on the fact pattern before us.
Accordingly, this court directs that a probation investigation take place followed by a forensic evaluation for the purpose of assisting us in determining what shall serve the best interests of the children. When this information has been placed before the court, a hearing shall be scheduled and a determination made.