OPINION OF THE COURT
Herbert B. Ray, J.
I. INTRODUCTION
The sole issue before the court is whether Broome County Family Court has subject matter jurisdiction to entertain Philip’s petitions for custody of his daughter, Stacy. Respondent mother’s, Sharon, only contact with this court has been to request an adjournment which was granted. She did not subsequently appear as directed. No responsive pleadings were filed. This threshold issue is complicated by reason of the fact that instead of actively defending the instant action, mother sought relief from the Superior Court of New Jersey subsequent to the initiation of the instant proceedings.
This action has led this court into a potential confrontation with a court of comparable jurisdiction in New Jersey. We are governed here not only by the uniform compact of State laws on the issue, but by the Federal law also covering these matters. (See, Ferguson v Ferguson, 130 Misc 2d 709 [1985].) These two laws are the Uniform Child Custody Jurisdiction Act (UCCJA) adopted by New York as article 5-A of the Domestic Relations Law, and the Parental Kidnaping Prevention Act (PKPA) (28 USC § 1738A).
II. PROCEDURAL HISTORY
The parties have had an extensive history of litigation in the Broome County court system. A review of the court records in the instant case reveals that on April 3, 1984 an attorney for Sharon S. filed the parties’ divorce judgment and *387 decree[1] dated March 27, 1984. On June 25, 1984, Philip (father) filed a petition for visitation which also requested that his support obligation be suspended during said visitation. The petition further alleged that the child’s mother had unilaterally removed herself to Texas.
This petition was resolved by stipulation of the parties which was entered of record on July 16, 1984 and incorporated in an order the same day. This order provided for father’s visitation and further specified, inter alia, "that each of the parties will keep the other party informed of the child’s well being at all times”.
The next petition, filed on January 7, 1985, sought modification of the visitation schedule because such visitation was "unworkable”. In this petition, mother also sought an order directing the father to pay the child’s airfare. This matter was also resolved by stipulation. The parties shared joint custody and father’s visitation was set forth.
Approximately one year later on January 8, 1986, father filed a petition requesting that "Sharon be held in contempt of this Court and that the custody and principal residence of the child, Stacy, be awarded to your petitioner.” Investigations were ordered by the undersigned on February 19, 1986. Prior to resolution of this petition mother also filed a petition on April 4, 1986 seeking a direction that father pay the full costs of air transportation. Attorney Thomas Gent represented mother in these proceedings. An order disposing of both petitions was entered June 20, 1986.
On June 5, 1986, father again petitioned the court requesting a direction that mother surrender the child to him. This matter was resolved by a simple stipulation of the parties: custody was granted to mother, father would have visitation as agreed and mother was not to "remove the child from Broome County without written consent of the defendant or prior authorization of the Court.”
On May 13, 1987, father filed his fourth petition with this court alleging, inter alia, that the parties entered into a written agreement allowing mother to remove the child from Broome County and that "she failed to inform petitioner that this move was to be without her present husband and she did not provide that information to petitioner until on or about April 1, 1987”. The petition further asserts that he was denied *388 visitation and that the child has been in Binghamton every other weekend, pursuant to New Jersey court order.[2] He alleges that he was not advised, nor did he receive notice of any New Jersey proceeding.
On June 16, 1987, father filed another petition. This petition asserts that prior to father’s consent to the child moving from this area, mother advised father that the move was necessitated by her husband’s need for employment. This petition also alleged that mother has threatened leaving the United States and moving to Saudi Arabia.
On June 21, 1987 Attorney Gent called and requested an adjournment because he was not available on the return date.
On June 29, 1987 this court received a letter from a Judge of the Superior Court of New Jersey. The Honorable Dominick J. Ferrelli indicated that he had requested mother’s New Jersey attorney to send this court copies of pleadings. These pleadings were subsequently received on June 29, 1987.
A temporary order was entered by this court on July 6, 1987. In this order it was noted that subsequent to father’s filing of the most recent proceedings, mother sought and received from the New Jersey court a temporary restraining order on June 25, 1987. This order was sought four days after Sharon had requested through her New Jersey attorney and local attorney an adjournment of the hearing date on Philip’s application for custody.
By temporary order dated July 6, 1987, Sharon was directed to have a representative present at the hearing. The parties were directed to file briefs. The court noted that the threshold issue of this court’s jurisdiction would be argued and heard on the date set for hearing.
On August 7, 1987 this court received an order from the New Jersey court determining that it is the proper forum to determine custody.
An ex parte application was received by this court on August 21, 1987 which was granted by decision and temporary order of the same date. Hearing on the issue of jurisdiction was held on August 17, 1987. Mother did not appear. This threshold issue is now ready for determination.
III. DISCUSSION
This is a child custody proceeding in which the petitioner *389 seeks to modify a previous custody decision of this court. The issue of jurisdiction has been raised by the court.
A two-step analysis in determining whether a court should entertain a custody dispute was set forth in the case of Boutros v Boutros (106 AD2d 536 [1984]). Initially the court is to decide whether a "jurisdictional predicate” exists in the forum State. The second step requires the court, if such jurisdictional predicate exists, to determine whether to exercise this jurisdiction.
The Appellate Division of our Department has recently discussed subject matter jurisdiction under the Parental Kidnaping Prevention Act in the case of Noguera v Noguera (129 AD2d 906, 908 [1987]) as follows: "The applicable Federal statutory provision, the Parental Kidnaping Prevention Act (28 USC § 1738A), preempts State law regarding jurisdiction in child custody proceedings between residents of different States (Matter of Mebert v Mebert, 111 Misc 2d 500, 508) and provides for jurisdiction where (1) State law grants jurisdiction to the State courts (28 USC § 1738A [c] [1]) and (2) a State court has previously made a custody determination and that State remains the residence of the child or of either party (28 USC § 1738A [c] [2] [E]; [d]).”
The child who is the subject of the instant proceeding has not lived in New York State for six months. She has resided in New Jersey.
Mere residence for more than six months in a State of a child who has been the subject of a custody proceeding in another State is not a sufficient basis for the court to exercise jurisdiction over the proceeding.
"In recent years, legislation has been enacted to avoid competition between States involving jurisdiction of child custody, shifting of children from State to State, and having custody determinations being made by several courts. This has limited the courts’ power to modify custody determination of other States.
"In 1977, the New York State Legislature adopted the UCCJA. In 1980, Congress adopted the PKPA, entitled, 'Full faith and credit given to child custody determinations.’ The PKPA, which applies to all courts of the United States, severely limits the power of a court of one State to modify the child custody determination made by another State. That section begins:
*390 " 'The appropriate authorities of every state shall enforce according to its terms, and shall not modify except as provided in subsection (f) of this section, any child custody determination made consistently with the provisions of this section by a court of another State.’ (US Code, tit 28, § 1738A, subd [a]; emphasis supplied.)” (Yacco v Burley, 117 Misc 2d 69, 71 [1982].)
Another State should not modify the child custody provision of a different State unless the exception in 28 USC § 1738A (f) applies. Subdivision (f) provides:
"A court of a State may modify a determination of the custody of the same child made by a court of another State, if—
"(1) it has jurisdiction to make such a child custody determination; and
"(2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination.”
Therefore, New Jersey should not modify the custody provision of this court’s previous New York decree unless the requirements of both paragraphs (1) and (2) of subdivision (f) are met. The requirement of (1) above refers to the subject matter jurisdiction of this court to make its previous order. This court’s jurisdiction at the entry of all previous orders was clear. The requirement set forth in (2) above contains two provisions, either of which, if met, will remove this proceeding from the application of the PKPA[3] and would allow New Jersey to modify our previous order. However, if neither provision is met, then New Jersey may not modify this court’s previous judgment.
Our court has predicate jurisdiction, as explained hereafter, and it has not, as of yet, declined to exercise its jurisdiction.[4] For this reason, New Jersey should not modify any decision until both criteria have been resolved under the Federal statute.
This court, Broome County Family Court, continues to have predicate jurisdiction. 28 USC § 1738A (d) provides the re *391 quirements which must be met for a court, which has made a custody determination, to continue to have jurisdiction over that child’s custody. That subdivision provides: "The jurisdiction of a court of a State which has made a child custody determination * * * continues as long as the requirement of subsection (c) (1) of this section continues to be met and such State remains the residence of the child or of any contestant.”
Subdivision (c) (1) requires that New York State continue to have subject matter jurisdiction over the instant custody proceedings. This requirement continues to be met.
The Uniform Child Custody Jurisdiction Act (Domestic Relations Law art 5-A) sets forth grounds for subject matter jurisdiction. This court may have grounds for such jurisdiction even if it is no longer the child’s "home state” for jurisdictional purposes. (Domestic Relations Law § 75-d [1] [a].)[5]
Predicate jurisdiction lies in New York State pursuant to section 75-d (1) (b) of the Domestic Relations Law.[6] "This provision permits a State court to exercise jurisdiction when it is in the best interest of the child if two criteria are met: '(i) the child * * * and at least one contestant, have a significant connection with this state, and (ii) there is within the jurisdiction of the court substantial evidence concerning the child’s present or future care, protection, training, and personal relationships’. Paragraph (b) of subdivision 1 is the least precise of the jurisdictional bases contained in section 75-d. As pointed out in the commissioner’s note to the Uniform Act (Uniform Child Custody Jurisdiction Act [9 ULA], § 3, p 124), '[t]he paragraph was phrased in general terms in order to be flexible enough to cover many fact situations too diverse to lend themselves to exact description’.” (Throneberg v Butcher, 102 AD2d 693, 694 [1984].)
The circumstances of the instant case satisfy the criteria of this subdivision. There is substantial evidence available within this jurisdiction upon which the court could base an intelligent custody decision. A continuing history of New York court involvement is present. The child has been in Broome County, New York, at least every other week. Extended family and the *392 child’s father reside here. In the court’s analysis of the Federal act to the facts of the Noguera case the Appellate Division noted that "It was not contested that petitioner was a resident of New York at the time of the hearing and that a New York court had previously made a custody award regarding this matter, i.e., this State’s Supreme Court, in granting the divorce, incorporated into the decree the custody provisions of the parties’ stipulation. Accordingly, Family Court had jurisdiction under 28 USC § 1738A if it had jurisdiction under New York law, and we are persuaded that it did.” (Noguera v Noguera, supra, at 908.) These facts are also present in the instant case. (See also, Jefferson v Downs, 107 Misc 2d 852 [1981].)
Another statutory factor to be weighed is whether "the exercise of jurisdiction by a court of this state would contravene any of the purposes [of the act]” (Domestic Relations Law § 75-h [3] [e]). One of the stated purposes of the act is to "deter abductions and other unilateral removals of children undertaken to obtain custody awards” (Domestic Relations Law § 75-b [1] [e]). Important in considering this factor is father’s uncontested evidence that mother did not tell him the truth in procuring his written consent to leave the State. Father’s uncontradicted assertion is that mother deliberately misled him concerning her marital status and her stated and written intention and agreement to allow visitation.
Also relative to this issue is mother’s request for an adjournment in this court. Immediately after this request was granted she filed for relief in New Jersey.[7] This behavior also supports a finding of predicate jurisdiction.
This court has found that it continues to have subject matter jurisdiction under the applicable State and Federal laws. As found in the case of Boutros v Boutros (106 AD2d 536, 538, supra) this court must now decide whether to exercise this jurisdiction. "Whether the court, in its discretion, should refuse to exercise subject matter jurisdiction depends on a balancing of certain factors, particularly those concerning the interests of the child” (supra, at 539).
This issue will be set for hearing.
*393 By copy of this decision and order to the New Jersey court, such court will be advised of this preliminary decision (see, Domestic Relations Law § 75-g) and requested to provide this court with certified copies of the pleadings filed as well as a summary of the proceedings. The Chief Clerk of this court is hereby directed and ordered to provide the New Jersey court with such certified copies of the instant proceedings.
Accordingly, the following is entered:
ORDER
1. This court finds that it has subject matter jurisdiction to entertain Philip’s petitions for custody.
2. Philip is granted temporary physical custody of the child, Stacy, until hearing on the issue of whether this court should decline to exercise its jurisdiction.
3. Hearing is set for the 29th day of September 1987 at 11:00 a.m., Courtroom A, Broome County Justice Building, Binghamton, New York.
4. The parties are directed to appear at the hearing.
5. William Maney, Esq., is appointed Law Guardian for the child, Stacy, and is directed to advise the court at the time of hearing as to what temporary custodial arrangement is appropriate.
6. Temporary custody will be decided at the time of hearing even if this court declines to exercise jurisdiction. In that event, this matter will be transferred to the appropriate court of the State of New Jersey.

. Neither party has ever raised the issue of a lack of specific reference in the divorce decree.

. A petition seeking visitation with her grandchild filed by Dorothy was dismissed by this court on March 13,1987.

. Under the UCCJA a court should not modify the decree of another State which rendered the decree unless it appears that the other State does not have jurisdiction or has declined jurisdiction. (Domestic Relations Law § 75-o [1]; see, Ruff v Ruff, 98 Misc 2d 934 [1979].)

. This decision is the second step of the Boutros analysis, and has not been decided in this preliminary determination.

. Under the cited provision, even if the child were absent from the State of New York, New York would remain the "home state” if the proceeding is commenced within six months of the move out of State. (See, Throneberg v Butcher, 102 AD2d 693 [1984].)

. The court does not address whether jurisdiction is necessary in an emergency to protect the child. (See, Quill v Quill, 99 AD2d 543 [1984]; Domestic Relations Law § 75-d [1] [c].)

. Section 75-g (3) of the Domestic Relations Law provides that, "If the court is informed during the course of the proceeding that a proceeding concerning the custody of the child was pending in another state before the court assumed jurisdiction it shall stay the proceeding and communicate with the court in which the other proceeding is pending”. (Emphasis supplied.)