[720 NYS2d 659]

In the Matter of MELODIE A. STEELE, Respondent, v ROBERT B. NEEMAN, Appellant. (Appeal No. 1.)

Fourth Department, February 7, 2001

### APPEARANCES OF COUNSEL

*Charles E. Fagan*, Jamestown, for appellant.

*Charles S. DeAngelo*, Jamestown, for respondent.

## OPINION OF THE COURT

KEHOE, J.

This child custody jurisdictional dispute is occasioned by parallel proceedings in New York and Wyoming (*see, Steele v Neeman,* 6 P3d 649 [Wyo]). Petitioner mother commenced this proceeding in Chautauqua County Family Court, seeking to modify respondent father's right to visit the parties' child, and the father thereafter commenced a proceeding in Wyoming District Court seeking to enforce and/or modify his rights. On the father's appeal, we must determine whether Family Court properly concluded that New York, as the child's "home state," has jurisdiction over the matter pursuant to the Uniform Child Custody Jurisdiction Act ([UCCJA] Domestic Relations Law art 5-A; *see,* Domestic Relations Law §§ 75-c, 75-d [1] [a] [i]) and, if so, whether Family Court's exercise of jurisdiction is consistent with the Parental Kidnaping Prevention Act ([PKPA] 28 USC § 1738A; *see,* 28 USC § 1738A [c]), notwithstanding the Wyoming court's purported exercise of "continuing" jurisdiction pursuant to the PKPA (*see,* 28 USC § 1738A [c] [1], [2]; [d], [g]). We conclude that Family Court properly exercised jurisdiction over this matter.

## Background

The parties were married in Colorado in 1979. Their child, Jake, was born in Wyoming on May 22, 1989. In August 1990 the mother filed for divorce in Wyoming. At about that time, the mother moved with Jake to New York, where they have resided since. During the divorce action, the parties entered into an agreement resolving the issues of child custody, visitation, and support. The mother was granted custody of Jake in New York and the father was awarded liberal visitation, including extended summer visitation with the child in Wyoming. That settlement agreement was incorporated into the divorce decree rendered by the Wyoming District Court on June 7, 1991.

## Prior proceedings in Wyoming

Thereafter, various proceedings to enforce or modify child support and/or visitation rights were brought by one party or the other in New York or Wyoming. The visitation proceedings, which are the only ones relevant herein, have generally focused on the duration and timing of visits and related transportation and expense issues. In October 1991, within months of the entry of the divorce decree, the father brought an application

in Wyoming to enforce his visitation rights and prevent the mother from interfering with visitation. The parties subsequently settled that proceeding by stipulation. In January 1992 the Wyoming District Court issued an amended divorce decree incorporating the terms of that stipulation. By the amended decree, the father was to have two weeks of summer visitation with Jake until Jake was six years old, at which time summer visitation was to increase to six continuous weeks. That was the Wyoming courts' last dealing with the parties on the issue of visitation until 1998, when this dispute arose.

## Prior proceedings in New York

In August 1994 the mother petitioned Chautauqua County Family Court for an order modifying visitation. The father appeared in the proceeding by counsel, initially to contest jurisdiction. Eventually, however, the parties entered into a written stipulation of settlement, which subsequently was incorporated into an August 21, 1995 order of Family Court. By that agreement and consent order, the father was to have two separate periods of visitation of three weeks each during the ensuing summer (which represented a modification of the Wyoming amended divorce decree), and continuous visitations of six weeks during each succeeding summer (as set forth in the Wyoming amended divorce decree).

In June 1996 the mother again petitioned Family Court for modification of visitation, resulting in a further stipulation by the parties and a further order of modification of Family Court, entered August 1, 1996. That consent order granted the father four weeks of summer visitation with Jake in Wyoming, required the father and Jake to attend counseling, and further allowed Jake, if his counselor so recommended, to remain in Wyoming for an additional two weeks of summer visitation. The summer of 1997 was the last time Jake visited his father in Wyoming.

## Current proceedings in New York and Wyoming

The instant dispute arose in 1998 and proceeded on parallel tracks in New York and Wyoming. In February 1998 the father applied in Wyoming District Court for modification of child support. The mother moved to dismiss that proceeding for lack of jurisdiction. (The mother has since conceded the Wyoming court's jurisdiction over the support issues, and those issues were later settled by the parties and are not relevant to this appeal.)

Thereafter, on March 12, 1998, the mother filed a petition in Family Court, seeking to modify Family Court's August 1996 order by limiting Jake's summer visitation with the father in Wyoming to two weeks instead of the six weeks previously granted. On April 23, 1998, the mother filed an amended petition raising issues of child support not implicated on this appeal. The father moved to dismiss on the ground that Family Court lacked jurisdiction over the issues of visitation and support.

Subsequently, in May 1998, the father filed an amended application in Wyoming District Court, seeking to modify and/or enforce the visitation provisions of the Wyoming amended divorce decree (even though that decree had been modified by two subsequent New York orders entered on consent). Following the parties' voluntary resolution of the support issues, the primary issue in both proceedings remained whether New York or Wyoming should exercise jurisdiction over the visitation dispute.

The Wyoming District Court issued its determination first. By order of June 2, 1998, it denied the mother's motion to dismiss for lack of jurisdiction, relying on PKPA provisions concerning continuing exclusive jurisdiction. It reserved on the merits of the father's application to modify/enforce visitation.

By letter to the Wyoming District Court dated July 10, 1998, Family Court asserted that New York had "home state" jurisdiction over visitation pursuant to the UCCJA. By letter dated July 14, 1998, the Wyoming court acknowledged that New York was Jake's home state under the UCCJA, but asserted that Wyoming retained continuing exclusive jurisdiction under the PKPA. By letter dated July 15, 1998, Family Court attempted to clarify the Wyoming court's confusion concerning the New York proceedings and the distinct issues of child support jurisdiction and visitation jurisdiction addressed therein. Family Court urged that, pursuant to the UCCJA, New York was the home state of the child, thus giving New York jurisdiction over the mother's petition to modify visitation, which had been filed two months before the father's Wyoming application. Family Court further pointed out that it had issued the two most recent orders concerning visitation.

On February 17, 1999, Family Court entered the order on appeal herein. That order modified visitation by reducing the father's summer visitation with Jake in Wyoming from four weeks to two weeks and requiring the father to accompany Jake on flights. Family Court rejected the father's challenge to

its exercise of jurisdiction under the UCCJA and PKPA, expressly determining that New York has home state jurisdiction and is the more convenient forum.

Subsequently, by order entered April 1, 1999, the Wyoming District Court reiterated that it had continuing exclusive jurisdiction under the PKPA. The Wyoming court again reserved decision on the merits of the visitation dispute.

Thereafter, on August 16, 1999, the Wyoming District Court determined the father's amended application to modify or enforce his visitation rights. That Wyoming order conflicts with Family Court's most recent order with regard to the length of visits and whether the father must accompany the child on flights. In determining those issues, the Wyoming court purported to uphold the visitation arrangement established by the Wyoming amended divorce decree, in apparent disregard of the fact that the decree had been modified by two prior New York orders entered on consent. With regard to the jurisdictional issue, the Wyoming court reiterated that it had continuing exclusive jurisdiction over custody and visitation and had not relinquished jurisdiction, and it implicitly rejected the mother's contention that it should decline jurisdiction under the UCCJA and PKPA in the exercise of its discretion.

Subsequently, on the mother's appeal, the Wyoming Supreme Court reversed the order of the District Court, holding that New York was Jake's home state under the UCCJA and observing that, although Wyoming had continuing jurisdiction under the PKPA, the case was one of concurrent jurisdiction between Wyoming and New York (*see, Steele v Neeman,* 6 P3d 649, *supra*). The Supreme Court further held that the District Court had abused its discretion by assuming jurisdiction based solely on Wyoming's "status as the issuer of the original [divorce] decree" without considering whether New York had a stronger basis for exercising jurisdiction as the home state of the child and as the more convenient forum under the UCCJA (*see, Steele v Neeman, supra,* at 655). The Supreme Court remitted the matter to the District Court for the exercise of its discretion under the UCCJA. In the meantime, the father perfected this appeal from the order of Family Court.

## Family Court properly exercised jurisdiction over this matter under the UCCJA and PKPA

The intent of Congress in enacting the PKPA was to "extend the requirements of the Full Faith and Credit Clause to custody

determinations" (*Thompson v Thompson,* 484 US 174, 183) and thereby give stability and finality to custody decrees and minimize jurisdictional competition between States (*see, Matter of Consford v Consford,* 271 AD2d 106, 113 [Peters, J., dissenting], citing Pub L 96-611, §§ 7, 8 [c], 94 US Stat 3569; *Matter of Hahn v Rychling,* 258 AD2d 832, 833, *lv dismissed* 93 NY2d 954). The PKPA applies to this interstate custody dispute and controls its outcome by preempting State law, to the extent that it is inconsistent therewith, in accordance with the Supremacy Clause of the United States Constitution (*see, Matter of Reis v Zimmer,* 263 AD2d 136, 143-144, *amended* 270 AD2d 968; *Matter of Collum v Kelley,* 262 AD2d 1057, *lv denied* 93 NY2d 819; *Matter of Michael P. v Diana G.,* 156 AD2d 59, 64-65, *lv denied* 75 NY2d 1003). However, provisions of State law are expressly incorporated into the PKPA and must be considered in construing that statute.

The first issue to be determined is which State, New York or Wyoming, is Jake's "home state," as that concept is defined by Federal and State law. Here, as found by both Family Court and the Wyoming Supreme Court, New York unquestionably is Jake's "home state," meaning the State in which Jake has lived with a parent for at least six consecutive months preceding the commencement of the instant proceeding (and the parallel Wyoming proceeding) for modification of visitation (*see,* 28 USC § 1738A [b] [4], [5], [9]; Domestic Relations Law § 75-c [2], [4], [5]-[7]; § 75-d [1] [a] [i]; *see also, Matter of Consford v Consford, supra,* at 111 [majority], 114 [dissent]; *see generally, Evans v Evans,* 208 AD2d 223, 226-227).

Analysis under the PKPA is based on the concept of continuing exclusive jurisdiction (*see,* 28 USC § 1738A [d]; *Matter of Mott v Patricia Ann R.,* 91 NY2d 856, 859-860; *Matter of Reis v Zimmer, supra,* at 145, 147; *Matter of Michael M. v Tanya E.,* 256 AD2d 1137, 1138, *lv dismissed in part and denied in part* 93 NY2d 907). The PKPA generally provides that a State court shall enforce, and shall not modify, any out-of-State determination made consistently with its provisions (*see,* 28 USC § 1738A [a], [h]). In applying that rule, we must determine which of the conflicting recent orders, Wyoming's or New York's, modified an out-of-State custody determination. Here, the Wyoming District Court and Family Court each nominally modified its own order or decree. However, in asking the Wyoming court to modify the Wyoming amended divorce decree, the father ignored the fact that the most recent orders affecting visitation were the 1995 and 1996 orders entered on

consent of the parties in Family Court, orders that themselves significantly modified the Wyoming divorce decree. Therefore, only the Wyoming court in this instance purported to modify an out-of-State custody determination, and thus only its actions are circumscribed by the PKPA (see, 28 USC § 1738A [a], [f], [h]). In contrast, Family Court in this instance modified only its own prior order, which it could do without implicating the provisions of the PKPA (see, 28 USC § 1738A [a], [f], [h]).

Even if we were to assume, arguendo, that the order or decree most recently modified by each court (or at least by the Wyoming court) was the Wyoming amended divorce decree, analysis under the PKPA nevertheless would support New York's exercise of jurisdiction over this dispute. The PKPA analysis looks first to the provisions of the PKPA itself and then to the jurisdictional provisions of State law. The PKPA provides that a State court determination is consistent with the PKPA only if the court continues to have jurisdiction under State law and if a specified condition of the PKPA is met (see, 28 USC § 1738A [c] [1], [2]). The applicable PKPA conditions are: that the forum is the home state of the child on the date of commencement of the proceeding (only New York meets that condition); that no other State would have jurisdiction as the home state, etc. (only New York could meet that condition); or that the forum court has continuing jurisdiction pursuant to the PKPA inasmuch as jurisdiction continues under the forum State's law and at least one parent remains a resident of the forum (for reasons stated infra, only New York meets that condition) (see, 28 USC § 1738A [c] [1], [2] [A] [i]; [B], [D], [E]; [d]; see also, 28 USC § 1738A [f], [h]). There are other conditions, but they are inapplicable to this case (see, 28 USC § 1738A [c] [2] [A] [ii]; [C], [D]).

The provisions of State law that are incorporated into the PKPA, and that must be satisfied in order for the forum court to exercise or continue to exercise jurisdiction consistent with any of the foregoing PKPA conditions (see, 28 USC § 1738A [c] [1]; [d], [f] [2]; see generally, Matter of Reis v Zimmer, supra, at 146-147; Matter of Collum v Kelley, supra, at 1057; Matter of MacAdam v Hosmer, 244 AD2d 665, 666, lv denied 91 NY2d 806), are those contained in New York's and Wyoming's nearly identical versions of the UCCJA (see, Domestic Relations Law § 75-d; Wyo Stat Annot § 20-5-104 [a]). The UCCJA provides that a court has jurisdiction only where: the forum is the home state of the child at the time of the commencement of the custody proceeding (only New York meets that condition); the

forum had been the child's home state within the six months prior to commencement of such proceeding and the child is absent from the forum, etc. (neither New York nor Wyoming meets that condition); it is in the child's best interests that the forum court assume jurisdiction because the child and at least one parent have a significant connection with the forum and there is within the forum substantial evidence concerning the child's present or future care, protection, training, and personal relationships (only New York meets that condition); the child is physically present in the forum and has been abandoned or needs emergency protection (neither New York nor Wyoming meets that condition); or no other State appears to have jurisdiction under the foregoing conditions and it is in the best interests of the child that the forum court assume jurisdiction (only New York could meet that condition) (*see,* Domestic Relations Law § 75-d [1]; Wyo Stat Annot § 20-5-104 [a]; *see generally, Vanneck v Vanneck,* 49 NY2d 602, 608-609).

Analysis of each State's law, as incorporated into the PKPA, thus compels the conclusion that Family Court has exercised jurisdiction over the visitation dispute in a manner consistent with the provisions of the PKPA. New York was the child's home state at the time of the commencement of this proceeding and has been the residence of one parent (and of the child) since the entry of Family Court's last order on the issue of visitation and even since the entry of the original Wyoming divorce decree (*see, Matter of Consford v Consford, supra,* at 110-112 [majority]; *Leo v Heard,* 253 AD2d 724; *Evans v Evans, supra,* at 226-228).

Our conclusion is buttressed by 28 USC § 1738A (g), which provides: "A court of a State [i.e., Wyoming] shall not exercise jurisdiction in any proceeding for a custody or visitation determination commenced during the pendency of a proceeding in a court of another State [i.e., New York] where such court of that other State [i.e., New York] is exercising jurisdiction consistently with the provisions of this section to make a custody or visitation determination." Here, of the two current visitation proceedings, the first to be commenced was the New York proceeding. Moreover, as we have concluded, the New York court has exercised jurisdiction consistent with the PKPA. Therefore, in keeping with the PKPA's requirements, the Wyoming court should have deferred to New York's exercise of jurisdiction rather than entertain the proceeding subsequently commenced there (*see, Evans v Evans, supra,* at 228, n).

Accordingly, the order should be affirmed.

PIGOTT, JR., P. J., GREEN, HURLBUTT and SCUDDER, JJ., concur.

Order unanimously affirmed, with costs.